# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAYMOND E. ECHEVARRIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20 C 5271 |
| ) | |
| DARRIN JACKSON and CYNTHIA ) | Judge Joan H. Lefkow |
| SPINA, each in his or her individual ) | |
| capacity, and the FOREST PRESERVE ) | |
| DISTRICT OF COOK COUNTY, an Illinois ) | |
| forest preserve district, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Defendants Darrin Jackson and the Forest Preserve District of Cook County's motion to dismiss count IV of the complaint (dkt. 11) is denied. See statement.[1]

## STATEMENT[2]

Raymond E. Echevarria brought this action alleging, among others, a claim for intentional infliction of emotional distress (IIED) against Darrin Jackson, a police officer employed by the Forest Preserve District, and against the District under a *respondeat superior* theory of liability. These defendants have moved to dismiss this count for failure to state a claim.

According to the complaint, which the court accepts as true for the purposes of this motion, Echevarria suffers from severe post-traumatic stress disorder (PTSD). (Dkt. 1 ¶ 8.) His licensed clinical professional counselor and psychiatrist each suggested that he visit the forest preserves to ameliorate his PTSD symptoms. (*Id.*) On September 30, 2019, at approximately 11:00 a.m., Echevarria drove his 2013 Honda CRV to a shelter at the Ned Brown Forest Preserve (Busse Woods) to write and practice distress management skills, including breathing techniques. (*Id.*) When the area near the shelter became crowded, Echevarria drove into the forest preserve in search of a more private area. (*Id.* ¶ 11.) Unable to find a suitable location, he parked in a nearby parking lot at Busse Woods and embarked upon a path on foot to find privacy. (*Id.* ¶ 11.)

---

[1] The court has jurisdiction under 28 U.S.C. § 1331. Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

[2] The facts are taken from Echevarria's complaint and are presumed true for this motion. *See Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

While on the path, Echevarria observed officer Darrin Jackson speed past a road, reverse, and park near his vehicle. (*Id.* ¶ 13.) Unbeknownst to Echevarria, Jackson had just met with a person named Camille who had called the District Police Department to report that a white male had exposed his erect penis to him in a sexual manner in Busse Woods. (*Id.* ¶¶ 14–15.) As Echevarria approached his vehicle, he asked Jackson, who was now standing outside of his car, if there was a problem. (*Id.* ¶ 14.) Jackson replied, "You bet there is a fucking problem; give me your license and sit your ass on the curb." (*Id.* ¶ 16.) Jackson pushed Echevarria toward the curb and detained him for close to an hour on suspicion that Echevarria had committed public indecency in violation of section 3-3-5D2 of the Cook County Forest Preserve District Code of Ordinances (FPDCC Code). (*Id.* ¶ 16.) Echevarria, in fact, had not exposed himself to anyone. (*Id.* ¶¶ 17, 19.) With approval from sergeant Cynthia Spina, Jackson arranged to have Echevarria's car towed. (*Id.* ¶ 19.)

While detained, Echevarria repeatedly asked Jackson for an explanation. (*Id.* ¶ 30.) At the first instance, Jackson laughed and said, "You better not run[,] or I will sic my dog after you." (*Id.* ¶¶ 24–25.) Echevarria then notified Jackson that he had PTSD and was experiencing anxiety because he did not know what was going on. (*Id.* ¶ 26.) Echevarria then suffered a panic attack. (*Id.* ¶ 27.) In response, Jackson informed Echevarria that a tow truck was on the way. (*Id.* ¶ 29.) While suffering from his panic attack, Echevarria asked Jackson, "Please provide me with information. That will help me." (*Id.* ¶ 31.) Jackson did not do so. (*Id.*)

When the tow truck arrived, Jackson pointed to Echevarria and said, "Look at this pervert." (*Id.* ¶ 32.) When a second police officer arrived, Jackson said to the other officer, "Look at this sicko." (*Id.* ¶ 33.) At some unspecified point during this process, Jackson informed Echevarria that he was going to be arrested because someone told Jackson that Echevarria "expos[ed] [himself] to people in the woods, and that's fucking sick." (*Id.* ¶ 34.) When Echevarria asked Jackson who told him this, Jackson did not respond. (*Id.*)

After towing Echevarria's car, Jackson told Echevarria, "You're fucking lucky. My boss told me to tow your car and give you a citation. I should be taking your ass to jail." (*Id.* ¶ 35.) Echevarria again asked "Who did this? This is inappropriate. Is there a picture or video?" (*Id.* ¶ 36.) Jackson threatened to take Echevarria to jail if he kept on talking. (*Id.* ¶ 37.) Jackson cited Echevarria for public indecency in violation of section 3-3-5D2 of the FPDCC Code. (*Id.* ¶ 38.)

The ordeal required Echevarria to seek additional treatment from his psychiatrist and licensed clinical professional counselor. (*Id.* ¶ 42.) Echevarria's treating psychiatrist instructed him to cancel an upcoming vacation trip to Sacramento, which he did, costing him approximately $2,000. (*Id.* ¶ 43.)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678

(2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

Defendants first argue that the IIED claim fails to satisfy a heightened pleading requirement under Illinois law. (Dkt. 11 at 1.) But federal pleading standards apply in federal court, *see Johnson* v. *Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997), and there is no heightened pleading standard for this claim in federal court.

Next, defendants argue that Jackson's alleged conduct was not "extreme and outrageous." In Illinois, an IIED claim requires that a plaintiff allege "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Kolegas* v. *Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). To plead "extreme and outrageous" conduct, the alleged conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Id.* As defendants see it, Echevarria's complaint alleges nothing more than insults, indignities, threats, annoyances, and petty oppression, citing *Feltmeier* v. *Feltmeier*, 798 N.E.2d 75, 79 (Ill. 2003).[3]

In *Kolegas*,[4] the Illinois Supreme Court considered a single instance of conduct, as is alleged here, making it a reasonable benchmark for the motion. There, a radio station had just aired an announcement of a cartoon festival, which would benefit the National Neurofibromatosis Foundation, and the plaintiff called in to describe the festival and his involvement. 607 N.E.2d at 204–05. After the plaintiff told the disk jockey that his wife had neurofibromatosis, the disk jockey hung up and, on the air, accused the plaintiff of scamming and implied that the plaintiff's wife was so hideous that no one would marry her except under duress. *Id.* at 212. The court concluded that the conduct was outrageous by virtue of the power asserted by the media to publish the insult to the community at large and the disk jockey's lack of any legitimate objective. *Id.*; *see also McGrath* v. *Fahey*, 533 N.E.2d 806, 812–13 (Ill. 1988) (affirming that the defendant's conduct of telephoning the plaintiff several times on one day concerning a dispute, while knowing the plaintiff did not want to be contacted and was at his home recuperating from a heart attack, was abusive.); *Tiesha Hines* v. *Lake Cty, Ill.*, 2021 WL 2633305, at *6 (N.D. Ill. June 26, 2021) (holding that allegations of deliberate indifference to a detainee's known medical needs were sufficient to plead IIED.)

Here, as alleged, Jackson held the power of the state over Echevarria. Jackson also threatened to sic his dog on Echevarria if he ran. Once Echevarria informed Jackson that he was experiencing a panic attack and had a mental illness, Jackson ignored Echevarria's pleas. Rather

---

[3] *Feltmeier* held that public policy did not prevent IIED claims between spouses and is apparently cited only for the quoted. It is sufficiently distinguishable that it need not be discussed here.

[4] For readability, references to *Kolegas* and *McGrath* may paraphrase and omit some quotation marks and internal citations.

3

than provide Echevarria with an explanation, Jackson swore at Echevarria, called him a "pervert" and "sicko" in front of others, and told him he was lucky not to be arrested. Echevarria has alleged that he experienced severe emotional distress, including having to obtain medical treatment and cancel a scheduled vacation. These facts are sufficient to state a cause of action for intentional or reckless infliction of emotional distress. *Kolegas*, 607 N.E.2d at 211 ("Behavior that might otherwise be considered merely rude, abrasive or considerate, may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional distress.").

    For the reasons stated above, defendants' motion to dismiss count IV of Echevarria's Complaint (dkt. 11) is denied.

Date: July 26, 2021

                                                   U.S. District Judge Joan H. Lefkow