IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAYMOND E. ECHEVARRIA, <br><br> Plaintiff, <br><br> v. <br><br> DARRIN JACKSON and CYNTHIA SPINA, each in his or her individual capacity, and the FOREST PRESERVE DISTRICT OF COOK COUNTY, <br><br> Defendants. | Case No. 20 C 5271 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiff Raymond Echevarria sued police officer Darrin Jackson, police sergeant Cynthia Spina, and the Forest Preserve District of Cook County ("the Preserve"), asserting various claims under 42 U.S.C. § 1983 and Illinois state law. Defendants have moved for summary judgment on all counts of Plaintiff's complaint (Dkt. 87). For the reasons discussed below, the motion for summary judgment is granted.

## BACKGROUND[1]

On September 30, 2019, a person who identified himself as "Camille" called the Forest Preserve police to report someone who had "just now" exposed himself in Busse North, an area of the preserve. (Dkt. 89 at ¶¶ 3, 10). The Forest Preserve police transferred the caller to the Cook County Sheriff's Department 911 center, where the call was received by dispatcher Teresa Serna.

---

[1] The facts are taken from the parties' respective Local Rule 56.1 statements and are undisputed unless otherwise noted. The Court refers to Defendants' Local Rule 56.1(d) Statement of Material Facts as "Dkt. 89" and Defendants' Response to Plaintiff's Statement of Facts as "Dkt. 99." Plaintiff failed to properly dispute Defendants' statement of material facts, as discussed in Section I, *infra*. The Court thus deems all of Defendants' facts to be admitted.

(*Id.* at ¶¶ 6, 10). The caller described the suspect to Serna, who input the description in the computer aided dispatch notes as follows: "M/W ABOUT 30-40's Dark Hair, 6ft tall. . . .DRIVING GRY HONDA CRV. . .LSW BLU/WHIT STRIPED TANK TOP, GRAY SWEAT PANTS. . . .PULLED HIS PANTS DOWN." (*Id.* at ¶ 8; Dkt. 99 at ¶ 1). The caller declined to identify himself to Serna, and based on her training and practice, she typed "refused" into the electronic record to reflect this. (Dkt. 89 at ¶ 9; Dkt. 99 at ¶ 2).

Jackson, a police officer for the Preserve, received a dispatch call while on patrol that a man had exposed himself to another individual on the trail at Busse North. (Dkt. 89 at ¶¶ 1, 3). Officer Jackson remembered the dispatcher describing the suspect as a white male with black hair who was 6'1" and about 220-230 pounds and wearing a tank top with red and blue stripes and sweat bottoms. (*Id.* at ¶ 4). Sergeant Spina recalled hearing a dispatch about an incident of public indecency at Busse North with a suspect described as a white male wearing a striped tank top with gray sweatpants, along with a description of a vehicle. (*Id.* at ¶ 5).

Officer Jackson drove to the Busse North entrance in response to the dispatch, where he immediately noticed a man staring at him as he entered. (*Id.* at ¶ 11). He pulled over next to the man ("Complainant") and asked if he was the person who had made the call; Complainant responded "yes." (*Id.* at ¶¶ 11-12). Officer Jackson told Complainant to "stay right here," and Complainant told Officer Jackson "he's still back there." (*Id.* at ¶ 13). Complainant said he was willing to sign a complaint and would stay at the entrance, which Officer Jackson relayed to dispatch. (*Id.* at ¶¶ 12-13). Officer Jackson also informed dispatch that he was in route to locate the suspect. (*Id.* at ¶ 13). However, he did not ask Complainant for his identifying information. (Dkt. 89-2 at 13-14). Sergeant Spina heard Officer Jackson's report to dispatch. (*Id.* at ¶ 14).

While searching for the suspect, Officer Jackson saw Plaintiff leaving a trail in Busse North, an area known for public indecency activity. (Dkt. 89 at ¶¶ 17-18). Officer Jackson observed that Plaintiff matched the description of the suspect, as he was approximately 6' tall, 215-220 pounds, white male with dark hair who was wearing a pink or red and blue striped tank top and gray sweat bottoms. (*Id.* at ¶ 17; Dkt. 99 at ¶ 14). At one point, Officer Jackson also testified that Plaintiff was wearing shorts. (Dkt. 99 at ¶ 21). Plaintiff concedes that he is a white male with dark hair, approximately 6' 2 ½", and when Officer Jackson saw him, he was wearing a blue and white striped tank top with gray sweatpants or sweat shorts and weighed approximately 215-225 pounds. (Dkt. 89 at ¶ 19). He further admits that at the time, he was approximately 37-38 years old, driving a gray Honda CRV, and generally met the description of the offender who allegedly pulled his pants down in the preserve. (*Id.* at ¶¶ 19-20).

According to Plaintiff, when he asked Officer Jackson if everything was okay, Officer Jackson responded by saying "you bet your ass there's a problem" and "give me your ID" and pushed Plaintiff towards a curb. (*Id.* at ¶ 70). Plaintiff alleges that Officer Jackson told him to sit down and that he "kn[ew] what he did." (*Id.*). Plaintiff asked Officer Jackson what was going on, told him he had PTSD, and explained that Officer Jackson was "hurting" him when he did not immediately inform Plaintiff why he was being stopped. (*Id.* at ¶ 71).

Upon being told that he matched the description of a suspect who had allegedly exposed himself in the preserve, Plaintiff immediately requested to see the Complainant, which Officer Jackson refused to allow for safety reasons. (*Id.* at ¶ 22). When Officer Jackson asked Plaintiff for his driver's license, Plaintiff raised his voice and again requested to see the Complainant. (*Id.* at ¶ 25). By speaking louder, Plaintiff triggered Officer Jackson's K-9 partner, who began to bark. (*Id.*). Officer Jackson told Plaintiff he could see Complainant in court. (*Id.*). Plaintiff provided his

driver's license, and Officer Jackson noticed he was sweating and shaking. (*Id.* at ¶¶ 26, 72). He believed this was because Plaintiff was nervous, not because he was experiencing any medical emergency. (*Id.*). Officer Jackson told Plaintiff he would be receiving an ordinance violation ticket instead of a state statutory charge for indecent exposure. (*Id.* at ¶ 26). A state charge would have required Plaintiff's arrest and subsequent bonding out. (*Id.*). Plaintiff admitted that Officer Jackson said he should arrest Plaintiff but would not. (*Id.*). Plaintiff further asserts that Officer Jackson said he should arrest Plaintiff because he exposed himself in public and "that's [expletive] sick." (*Id.* at ¶ 76). Because Plaintiff met the description of the suspect, and Complainant indicated his willingness to stay and sign the complaint, Officer Jackson issued Plaintiff an ordinance ticket violation for public indecency pursuant to Section 3-3-5d2 of the Forest Preserves of Cook County District Code of Ordinances ("District Code"). (*Id.* at ¶¶ 46-47, 49).

District Code Section 3-3-5d2 provides that any person of the age of 13 and upwards who, in a public place, does a lewd exposure of the body with intent to arouse or to satisfy his or her sexual desire commits public indecency. (*Id.* at ¶ 50). Further, District Code Section 3-4-1, titled "Motor Vehicles, Seizure and Impoundment" provides, in pertinent part:

> The owner of record of any motor vehicle that is used during the commission of any of the qualified violations as set forth in Section 3-4-2 [including public indecency] shall be liable to the District for an administrative penalty of $500.00 plus any towing and storage fees applicable under section 3-4-2. Any such vehicle shall be subject to seizure and impoundment pursuant to this chapter.

(*Id.* at ¶ 51). Before a vehicle may be towed, the arresting officer must have "probable cause to believe that a vehicle is subject to a seizure and impoundment pursuant to this chapter." (*Id.*). The Preserve and its officers interpret the phrase "during the commission" used in Section 3-4-1 broadly, and their interpretation has been challenged unsuccessfully in administrative proceedings

4

and state court proceedings in which plaintiffs have alleged *Monell* violations against the Preserve. (*Id.* at ¶¶ 58-69).

After issuing Plaintiff the ordinance violation, Officer Jackson called Sergeant Spina, his supervisor, and requested permission to have Plaintiff's vehicle towed pursuant to District Code Section 3-4-1. (*Id.* at ¶ 27). He did so because Plaintiff met the description of a suspect alleged to have committed an act of public indecency, Complainant was willing to sign the complaint, and Plaintiff used his vehicle to take him to and around the forest preserve. (*Id.* at ¶ 27). In requesting the tow, Officer Jackson told Sergeant Spina that Plaintiff was with him and matched the description of the suspect and Complainant was willing to sign a complaint and was asked to stay at the entrance of Busse North to do so. (*Id.* at ¶¶ 28-29). Believing there was probable cause for a citation and a tow pursuant to the District Code, Sergeant Spina authorized the administrative tow. (*Id.* at ¶¶ 27, 28, 30). Although Sergeant Spina never came to Busse North prior to authorizing the tow, she was able to ask Officer Jackson questions pertaining to a probable cause assessment over the phone. (*Id.* at ¶ 31). This was normal in the Preserve operations, despite Preserve General Order 08-01's requirement that the supervisor on duty respond to the scene to determine probable cause. (*Id.*; Dkt. 89-13).

After the tow had been authorized, Officer Jackson told Plaintiff to take his insurance registration, cards, and other valuables from the car so that he would have the necessary documents to retrieve his car at the impound lot. (Dkt. 89 at ¶ 33). Plaintiff signed documents related to the administrative tow, and Officer Jackson provided him a court date. (*Id.* at ¶ 34). After giving the tow truck driver Plaintiff's keys, Officer Jackson departed the scene to return to the Busse North entrance to meet Complainant because another officer, Officer Rogers, had arrived to supervise the tow. (*Id.* at ¶¶ 32, 34, 36). Plaintiff alleges that before Officer Jackson left the scene, he gestured

to Plaintiff and said something to Officer Rogers and the tow truck driver to the effect of "sicko" or "pervert." (*Id.* at ¶¶ 73-74). Plaintiff further alleges that, at some point, Officer Jackson told Plaintiff not to run or he would send his dog after him. (*Id.* at ¶ 75). Officer Jackson denies he said anything of the sort to Officer Rogers, the tow truck driver, or Plaintiff. (*Id.* at ¶ 78).

Officer Jackson called Sergeant Spina to tell her that the tow truck had arrived, and he was returning to the entrance of Busse North to have Complainant sign the ticket. (*Id.* at ¶ 35). Forty to forty-five minutes had passed since Officer Jackson left Complainant. (*Id.* at ¶ 37). By the time Officer Jackson returned, Complainant was gone. (*Id.* at ¶ 38). Officer Jackson relayed this to Sergeant Spina and told her he was looking for him. (*Id.* at ¶¶ 39-40). Despite his search efforts, Officer Jackson did not find Complainant. (*Id.* at ¶ 41). When he told Sergeant Spina that he could not find Complainant, Sergeant Spina ensured the audio of Complainant's call was preserved, even though it did not include any identifying information. (*Id.* at ¶¶ 42-43). Still, Officer Jackson confirmed that, based on the audio of the call, the caller and Complainant were the same person. (*Id.* at ¶ 45). Two weeks later, Plaintiff's ordinance violation ticket was dismissed, and he was refunded his administrative tow fees. (*Id.* at ¶ 48).

Plaintiff filed suit alleging unreasonable seizure of property and false arrest in violation of the Fourth Amendment, *Monell* and indemnification claims, and intentional infliction of emotional distress and malicious prosecution. Defendants' motion for summary judgment is fully briefed and ripe for ruling.

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

6

party" and "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *id.* at 324, and support their position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). Summary judgment is the time for a litigant to "put up or shut up" by "show[ing] what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (quotations omitted). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, all "justifiable" inferences are drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (non-moving party receives "benefit of conflicting evidence" as well as "any favorable inferences that might be reasonably drawn from the evidence."). Additionally, a court must refrain from weighing evidence or making credibility determinations. *Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citation omitted).

## **DISCUSSION**

### I. **Local Rule 56.1 Requirements**

Before addressing the merits of Defendants' motion, the Court must discuss Plaintiff's failure to comply with Local Rule 56.1. Although Defendants filed a statement of material facts in support of summary judgment under LR 56.1(a)(2) (Dkt. 89), Plaintiff did not respond as required

under LR 56.1(b)(2). Instead of filing a response to the LR 56.1(a)(2) statement with attached evidentiary support, Plaintiff simply denied Defendants' material facts in his response brief by indicating, "[t]he facts set forth by the Defendants are disputed, and therefore Defendants have not established the absence of a genuine issue of material fact for the jury" and "[a]ll facts are in dispute in this matter. (See DSOF and PSOF)." (Pl.'s Mem. of Law in Opp'n to Defs.'Mot. for Summ. J. at ¶¶ 5, 9, Dkt. 95).

But "[a] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Bancorp Bank v. Metro. Diagnostic Imaging, Inc.*, No. 20 C 1841, 2023 WL 1800082, at *7 (N.D. Ill. Feb. 7, 2023) (citing *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. Mar. 7, 2000)). The Seventh Circuit has "recognized time and again" that "district courts may require strict compliance with their local rules[.]" *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020). Because Plaintiff failed to properly deny any of Defendants' material facts as required under LR 56.1, the Court deems each of them admitted for purposes of this summary judgment motion.

That said, in opposing summary judgment, Plaintiff filed a statement of additional facts as permitted under LR 56.1(b)(3), which Defendants argue "should be disregarded in its entirety because he does not cite any of his twenty-three statements anywhere in his Response memorandum" and thus they are "extraneous factual statements" that Defendants "move to strike and disregard." (Reply in Supp. of Defs.' Mot. for Summ. J at 6, Dkt. 98). Defendants further contend that "[t]o the extent the Court is willing to consider Plaintiff's filing, Defendants move to strike the assertions that otherwise fail to comply with LR 56.1." (*Id.*). Plaintiff's statement of

additional facts also fails to comply with LR 56.1(b)(3) because it does not attach as exhibits any cited evidentiary material.

Nevertheless, the Court notes that it need only consider a handful of Plaintiff's facts because, regardless of if they are properly cited and/or supported (many of them are not), most are merely duplicative of those offered by Defendants and undisputed by Plaintiff. All that to say, the Court considers any *additional* (as contemplated by the local rules) *material* facts that Plaintiff has offered *with* proper citations and support only.

**II.** **Fourth Amendment Unreasonable Seizure of Property against Jackson, Spina, and the Preserve (for indemnification) (Count I), Unreasonable Seizure of Person against Jackson and the Preserve (for indemnification) (Count III), and Malicious Prosecution against Jackson and the Preserve (Count V)**

Defendants move for summary judgment on Counts I, III, and V, arguing that each claim is defeated by the existence of probable cause; and alternatively, they are entitled to qualified immunity based on the existence of arguable probable cause. (Dkt. 92 at 7-17).[2] Plaintiff counters that the report about the suspect who exposed himself was unreliable and thus does not support probable cause. (Dkt. 95 at 3-4). Further, Plaintiff argues that whether Officer Jackson and Sergeant Spina are entitled to qualified immunity is a question for a jury. (*Id.* at ¶¶ 9-10).

Probable cause exists when an officer has a reasonable belief that an arrestee has committed a crime. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013). While this reasonable belief must be more than a "hunch," it is less than a finding that, more likely than not, the arrestee has committed a crime. *Id.* Probable cause "depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "The principal component[] of a determination of

---

[2] The Court refers to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as "Dkt 92," Plaintiff's Memorandum of Law in Opposition to Defendant[s'] Motion for Summary Judgment as "Dkt. 95," and Reply in Support of Defendants' Motion for Summary Judgment as "Dkt. 98."

. . . probable cause will be the events which occurred leading up to the . . . search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amounted to . . . probable cause." *Ornelas v. U.S.*, 517 U.S. 690, 696 (1996). In determining whether probable cause exists, the officer may draw inferences based on his experience. *Id.* at 700. "A police officer has probable cause to arrest when, *at the moment the decision is made*, the facts and circumstances within [his] knowledge and of which [he] has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed . . . an offense." *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999) (emphasis added). "[T]he fact that the officer later discovers additional evidence unknown to her at the time of the arrest is irrelevant to whether probable cause existed at the crucial time." *Id.* at 953-54. "While the existence of probable cause is often a jury question, summary judgment is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Id.* at 953.

A finding of probable cause defeats a plaintiff's claims for Fourth Amendment unreasonable seizure of property, unreasonable seizure of person (false arrest), and state law malicious prosecution. *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 350 (7th Cir. 2019). *See also Bailey v. City of Chi.*, 779 F.3d 689, 694 (7th Cir. 2015) ("[p]robable cause is an absolute defense to any claim under § 1983 for wrongful arrest"); *Bailey v. U.S.*, 568 U.S. 186, 192 (2013) (seizure is reasonable when based on probable cause). And because probable cause existed to detain Plaintiff, issue an ordinance violation, and administratively tow his car, Counts I, III, and V cannot withstand Defendants' summary judgment motion.

Any reasonable officer would have believed that Plaintiff was the person who exposed himself to Complainant on the trail in Busse North. The match between Complainant's description

of the suspect received by Officer Jackson from dispatch and Officer Jackson's observation of Plaintiff when he emerged from the trail was *nearly perfect*, a fact Plaintiff himself admits. A white male, with dark hair, about 6 feet tall, weighing somewhere in the ballpark of 210-230 pounds is Plaintiff. True, there is some dispute as to the clothing of the suspect and Plaintiff, namely whether the tank top was blue with white stripes, red stripes, or pink stripes.[3] Further, there is conflicting evidence about whether Plaintiff was wearing gray sweatpants or gray sweat shorts. But the law does not require an exact match with a suspect's description before an officer has probable cause to detain or initiate an arrest. *See, e.g.*, *Muhammad v. Pearson*, 900 F.3d 898, 909 (7th Cir. 2018) ("Discrepancies between a witness's description and an officer's observation of the suspect are not unusual and do not automatically negate probable cause."); *Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001) (finding probable cause existed when suspect who was allegedly naked in a forest preserve did not "match exactly" the characteristics provided by the victims who saw him on a trail but the suspect "bore a fair resemblance"). The description Officer Jackson received and his subsequent observation of Plaintiff certainly gave him more than a mere "hunch" that Plaintiff was the man for whom he was looking. After all, "[t]he Fourth Amendment demands reasonableness, not perfection[.]" *Pasiewicz*, 270 F.3d at 525.

But even beyond the near perfect match of the physical description between Plaintiff and the suspect, additional factors supported the probable cause determination. From experience, Officer Jackson knew that Busse North, the area in which he found Plaintiff, was known for acts of public indecency. And he noted that Plaintiff was shaking and sweating when handing over his

---

[3] The Court notes that although Plaintiff also appeared to be around the suspect's age and was driving a gray Honda CRV, there is no evidence that Officer Jackson was ever informed of the suspect's age or vehicle. Therefore, these factors do not play a role in the Court's probable cause determination, as it considers only what Officer Jackson knew at the time of his actions.

11

driver's license. These facts, coupled with the physical description of the suspect, further support a reasonable officer's belief that Plaintiff had committed a crime.

Plaintiff argues only that Officer Jackson did not have probable cause because Complainant's tip was unreliable. In support, he cites two cases—*Florida v. J.L.*, 529 U.S. 266 (2000) and *People v. Rhinehart*, 961 N.E.2d 933 (Ill. App. Ct. 2011)—both of which involve questions of whether an anonymous tip provided sufficient indicia of reliability to support police officers' reasonable suspicion to stop and frisk a suspect. While the Court acknowledges that Complainant provided only one name, Camille, to the Forest Preserve police and "refused" to provide his name to the Cook County Sheriff's department, he can hardly be viewed as "anonymous." The fact that Officer Jackson did not record Complainant's name is simply because, acting in a hurry to find the suspect, he did not ask for it. It was not because Complainant refused to give it to him. It is true that Complainant could no longer be found after Officer Jackson returned to the Busse North entrance. But *at the time* Officer Jackson made the probable cause determination, he had spoken to Complainant who said he would sign the complaint and would be waiting there to do so. The fact that Complainant disappeared does not alter the probable cause analysis. In the approximately forty-five minutes that passed between Officer Jackson leaving Complainant to search for the suspect and his return, it is quite possible that, rather than trying to be elusive, Complainant grew tired of waiting. Considering the totality of the circumstances, nothing would have led Officer Jackson to believe that Complainant was unreliable.

Consequently, the Court finds that based on these facts, any reasonable officer would have had probable cause to believe that Plaintiff had committed an ordinance violation which under the Preserve's ordinances allowed him to request and obtain authorization for an administrative tow of Plaintiff's car. While Sergeant Spina did not follow General Ordinance 08-01 by reporting to

the scene prior to making the probable cause determination, that does not negate the existence of probable cause to detain and prosecute Plaintiff for an ordinance violation. Because probable cause defeats counts I, III, and V as a matter of law, summary judgment on each of these counts is granted in favor of Defendants.[4]

### III. <u>Intentional Infliction of Emotional Distress (IIED) Claim Against Officer Jackson and the Preserve (Count IV)</u>

Defendants argue they are entitled to summary judgment on Plaintiff's IIED claim because "Plaintiff has not shown that Defendants conduct was extreme and outrageous, or so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." (Dkt. 92 at 23). Plaintiff failed to meaningfully rebut Defendants' argument, stating only that the previously assigned District Judge denied Defendants' motion to dismiss this count in 2021 because the facts were sufficient to plead a cause of action. (Dkt. 95 at 2).[5] But Rule 12(b)(6) motions address a minimal pleading standard, while Rule 56 focuses on the sufficiency of the evidence in a developed record. The two are not equivalent.

"To state a cause of action for IIED under Illinois law, a plaintiff must allege that: '(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Shamim v. Siemens Indus.*,

---

[4] Even if the Court found probable cause to be lacking in this case, it would find that Defendants were protected by qualified immunity. "[O]nly if no reasonable officer could have mistakenly believed that he had probable cause to arrest is [qualified] immunity forfeited." *Wollin v. Gondert*, 192 F.3d 616, 625-26 (7th Cir. 1998) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988)). That standard is not met here. Defendants also argue they are entitled to summary judgment on Count I because it is "untenable, underdeveloped, and fails to adequately challenge the constitutionality of the policy." (Dkt. 92 at 17-20). Having found that probable cause existed and, even if it didn't, Defendants would be entitled to qualified immunity, the Court need not address this argument.

[5] This case was reassigned from Judge Lefkow to Judge Hunt on June 2, 2023. (Reassignment Order, Dkt. 75).

*Inc.*, 854 F. Supp. 2d 496, 511 (N.D. Ill. Mar. 30, 2012). Whether conduct is "extreme and outrageous" is determined using an objective standard, and "Illinois case law makes clear that the standard is high and 'that under no circumstances [do] "mere insults, indignities, threats, annoyances, petty oppressions, or otherwise trivialities" qualify as outrageous conduct.'" *Id.* (citations omitted). To be considered extreme and outrageous, "a defendant's conduct must be 'so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community.'" *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 626 (7th Cir. 2010) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003)).

The Illinois Supreme Court has set out various factors for consideration in determining whether conduct rises to the level of extreme and outrageous, among them "the power or authority that a defendant has over a plaintiff and whether . . . threats [made] were mere idle threats, whether defendant reasonably believed that his objective was legitimate, and the defendant's awareness that the plaintiff was susceptible to emotional distress." *Shamim*, 854 F. Supp. 2d at 511-12. *Accord Schweihs v. Chase Home Finance, LLC*, 77 N.E.3d 50, 64 (Ill. 2016). These factors "are to be considered in light of all of the facts and circumstances in a particular case, and the presence or absence of any of these factors is not necessarily critical to a cause of action for intentional infliction of emotional distress." *Schweihs*, 77 N.E.3d at 63.

Plaintiff contends that Officer Jackson referred to him as a "sicko" and "pervert" and threatened to send a K-9 dog after him if he ran. Even assuming that is true—as the Court must construe all reasonable inferences in favor of Plaintiff—those comments fail to rise to the level of extreme and outrageous conduct required to prevail on an IIED claim. Plaintiff may have been insulted by Officer Jackson, but name calling is not actionable under Illinois law. *See Shamim*, 854

F. Supp. 2d at 513 (holding that offensive slurs amounted to plaintiff being "verbally insulted" and this did not rise to actionable extreme and outrageous conduct). The same is true for mere threats.

Further, while the Court acknowledges that Officer Jackson held a position of authority over Plaintiff, the evidence fails to show he abused that authority in any way. In fact, Officer Jackson told Plaintiff that he was receiving an ordinance violation rather than being arrested. Finally, although Plaintiff allegedly told Officer Jackson that he suffered from PTSD, Officer Jackson had no reason to believe that Plaintiff was particularly susceptible to emotional distress. True, Plaintiff was sweating and shaking, but Officer Jackson would have no reason to credit that to PTSD as opposed to the fact that Plaintiff was accused of engaging in particularly sensitive criminal conduct.

If Officer Jackson did make these comments, it is unfortunate that a patron of the Preserve was subjected to such conduct by a public servant. Still, it is not enough to establish a viable IIED claim. As such, Plaintiff's claim fails at the first prong of the test and summary judgment is granted in favor of Defendants on Count IV.

IV. <u>***Monell* Claim Against the Preserve (Count II)**</u>

Finally, the Preserve argues that it is entitled to summary judgment on Plaintiff's Section 1983 *Monell* claim. (Dkt. 92 at 20-23). In his complaint, Plaintiff alleges that "[t]he unconstitutional seizure of [Plaintiff's] car was the result of a custom of the [Preserve] of seizing, pursuant to Section 3-4-1, motor vehicles driven by people to the forest preserves under its jurisdiction when the driver is charged with public indecency for alleged activity within the forest preserve even though the motor vehicle was not used 'during' the commission of the alleged offense" and "[t]his custom is so persistent and widespread that it is the standard operating procedure of the [Preserve]." (Compl. at 12, Dkt. 1). According to the Preserve, Plaintiff cannot

prove that (1) the Preserve had an unconstitutional custom, (2) the Preserve was deliberately indifferent, or (3) causation of an alleged constitutional violation. (Dkt. 92 at 20-23). In response, Plaintiff argues only that "[i]t was the pattern and practice for [the Preserve] and their Officers to tow the vehicles of homosexuals that visited the Forest Preserve after issuing them citations for public indecency" and "[t]here was an unspoken understanding that vehicles of those accused of public indecency would be towed." (Dkt. 95 at ¶¶ 26, 28). Ultimately, this claim boils down to the fact that Plaintiff takes issue not with the ordinance itself, but with the Preserve's interpretation of it—namely, the breadth with which the Preserve reads the phrase "during the commission."

A plaintiff may sue a local government under Section 1983 when "execution of a government's policy or custom" causes constitutional injury. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). But "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have *authorized* [constitutional injury] is quite beside the point." *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (emphasis in original). As discussed *supra*, Plaintiff did not suffer a constitutional violation at the hands of Officer Jackson or Sergeant Spina. The seizure of his vehicle was not unconstitutional. Therefore, his *Monell* claim fails, even if the Preserve's interpretation of the ordinance might have authorized some sort of constitutional injury. *Swanigan v. City of Chi.*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations.").

Moreover, even if Plaintiff's constitutional rights were violated (they were not), his *Monell* claim would still fail because he cannot show that any custom (for example, the Preserve's interpretation of "during the commission") caused the constitutional violation. The Seventh Circuit

has explained that "[a] city . . . may not be held liable under Section 1983 for every constitutional violation caused by its policies or customs; they must be at fault (or culpable) in some sense for establishing or maintaining the policy or custom." *Jones v. City of Chi.*, 787 F.2d 200, 203 (7th Cir. 1986). "At the very least there must be an 'affirmative link' between the custom at issue (especially when the custom itself does not establish wrongdoing) and the constitutional deprivation alleged . . . . [T]here must be some knowledge or an awareness—actual or imputed—of the custom and its consequences showing the municipality's approval, acquiescence, or encouragement of the alleged unconstitutional violation." *Id.* at 204.

It strains credulity to see how such an affirmative link could be established here. As the Preserve notes, in 2016, the *exact same question* (the interpretation of "during the commission") about the *exact same ordinance* (3-4-1(B)) was the subject of litigation involving a *Monell* claim identical to the one at issue in this case.[6] And in 2016, the Preserve won summary judgment on a plaintiff's *Monell* claim. An affirmative link between the Preserve's interpretation of the ordinance and a constitutional violation cannot be established here. Rather than operating with "some knowledge or awareness" that the "custom and its consequences" encouraged a violation, the Preserve had every reason to think just the opposite. As a result, summary judgment is granted in favor of the Preserve on Count II.

---

[6] The Court observes that Attorney Joanie Rae Wimmer, who represented Plaintiff in this case when he filed his complaint (but was granted leave to withdraw as counsel for Plaintiff on 6/9/21 (Dkt. 25)) also represented the plaintiffs who brought a *Monell* claim against the Preserve in 2016. To that end, some of the pertinent *Monell* allegations in the 2016 state court lawsuit are nearly verbatim to those in this lawsuit.

## **CONCLUSION**

For all the foregoing reasons, Defendants' motion for summary judgment is granted. Judgment is entered in favor of Defendants.

**DATED**: January 22, 2025          **ENTERED**:

*LaShonda A. Hunt*

LASHONDA A. HUNT
United States District Judge